## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

HOME BUILDERS ASSOCIATION OF
NORTHERN CALIFORNIA, et al.,

   Plaintiffs,

   vs.

U.S. FISH AND WILDLIFE SERVICE et al.,

   Defendants,

   and

CENTER FOR BIOLOGICAL DIVERSITY,
1333 N. Oracle Rd.
Tucson, AZ  85705

   Intervenor-Defendant –Applicant.

Civ. No. 06-00932 (RWR)

---

### INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S MOTION TO INTERVENE AS A DEFENDANT

  Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7(j), the Center for Biological Diversity ("Center") hereby moves this Court to intervene as of right as a Defendant in this case, or, in the alternative, for permissive intervention.  The Center's motion to intervene is unopposed by the Federal Defendants and the Plaintiffs.

  This motion is based on the attached Memorandum of Points and Authorities in support thereof and its exhibits, the pleadings, and any other matters that may be submitted to the Court during oral argument.  This motion is filed concurrently with the following documents:

  [PROPOSED] ORDER GRANTING INTERVENTION;

  EXHIBIT A:   DECLARATION OF KASSIA R. SIEGEL IN SUPPORT OF INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S MOTION TO INTERVENE AS A DEFENDANT AND [PROPOSED] MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA (WITH ATTACHMENTS 1-9);

EXHIBIT B:  DECLARATION OF PETER GALVIN IN SUPPORT OF INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S MOTION TO INTERVENE AS A DEFENDANT AND [PROPOSED] MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**;**

EXHIBIT C:   DECLARATION OF DOUGLAS L. BEVINGTON IN SUPPORT OF INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S MOTION TO INTERVENE AS A DEFENDANT AND [PROPOSED] MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA;

EXHIBIT D:  ANSWER   TO   COMPLAINT   FOR   DECLARATORY   AND INJUNCTIVE RELIEF;

EXHIBIT E:  CERTIFICATE REQUIRED BY LCvR 7.1 OF THE LOCAL RULES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA;

EXHIBIT F:  INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S [PROPOSED] MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;

EXHIBIT G: [PROPOSED] ORDER TRANSFERING VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA;

EXHIBIT H:  [PROPOSED] MOTION FOR KASSIA R. SIEGEL TO APPEAR PRO HAC VICE; DECLARATION OF KASSIA R. SIEGEL IN SUPPORT OF [PROPOSED] MOTION TO APPEAR PRO HAC VICE; AND [PROPOSED] ORDER ADMITTING ATTORNEY PRO HAC VICE

Respectfully submitted this 30th day of June, 2006.

/s/ Erin M. Tobin
_____

Erin M. Tobin
(D.C. Bar No. 494948)
Katherine A. Meyer
(D.C. Bar No. 244301)

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20009
(202) 588-5206
(202) 588-5049 fax

Kassia Siegel (<u>Pro Hac Vice</u> Applicant)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Telephone: 760-366-2232
Facsimile: 760-366-2669

Attorneys for Intervenor-Defendant-Applicant Center for
Biological Diversity

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **HOME BUILDERS ASSOCIATION OF NORTHERN CALIFORNIA, <u>et al</u>.,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**U.S. FISH AND WILDLIFE SERVICE <u>et al</u>.,**<br><br>**Defendants,**<br><br>and<br><br>**CENTER FOR BIOLOGICAL DIVERSITY, 1333 N. Oracle Rd. Tucson, AZ  85705**<br><br>**Intervenor-Defendant-Applicant.** | **Civ. No. 06-00932 (RWR)** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO INTERVENE AS A DEFENDANT**

Pursuant to Federal Rule of Civil Procedure 24 and Local Civil Rule 7(j), the Center for Biological Diversity ("Center") submits this Memorandum of Points and Authorities in support of its Motion to Intervene as a Defendant.

# INTRODUCTION

In this case, Plaintiffs challenge the same final regulation that has just been fully adjudicated in a case brought by Intervenor-Defendant-Applicant Center for Biological Diversity in the U.S. District Court for the Northern District of California.  In fact, this case is directly related to a series of cases brought by the Center for Biological Diversity seeking full protection for a rare and imperiled amphibian under the Endangered Species Act ("ESA"). 16 U.S.C. §§ 1531, <u>et</u> <u>seq</u>..  The most recent case, <u>Center for Biological Diversity, et al. v. U.S. Fish and</u>

Wildlife Service, et al., Civ. No. 04-4324 WHA (N. D. Cal.) resolved challenges to the same August 4, 2004 Final Rule challenged by Plaintiffs in the case at hand. The Center therefore seeks to intervene as of right as a Defendant. In addition, the Center also concurrently submits a [Proposed] Motion to Transfer Venue to the Northern District of California (Exhibit F).

The Center's intervention is unopposed. Exhibit A at ¶¶ 2,3. (Declaration of Kassia R. Siegel in Support of Intervenor-Applicant Center for Biological Diversity's Motion to Intervene as a Defendant and [Proposed] Motion to Transfer Venue to the Northern District of California ("Siegel Dec.")).

At issue in this case is the California tiger salamander, an amphibian adapted to the grasslands, oak woodlands, and seasonal wetlands of California, and found nowhere else in the world. There are three "distinct population segments" of the California tiger salamander, each of which is listed separately under the ESA. Because the ESA mandates that such "distinct population segments" be separately protected as "species," the three salamander populations have followed somewhat divergent paths towards ultimate protection under the ESA. The steps leading to the protection of this species demonstrate why the Center's Motion to intervene as a defendant should be granted.

The subject of this lawsuit, the Central California distinct population segment of the California tiger salamander ("Central California Salamander"), historically occurred throughout the Great Central Valley and Coast Ranges of California, and is listed as "threatened" under the ESA. The Sonoma County distinct population segment of the California tiger salamander ("Sonoma Salamander") occurs only in Sonoma County and is listed as "endangered." The Santa Barbara distinct population segment ("Santa Barbara Salamander") is found only in Santa Barbara County and is also listed as "endangered."

The road to protection for these three salamanders began in 1992, when the leading scientific expert on the California tiger salamander petitioned the U.S. Fish & Wildlife Service ("the Service") to list the species as "endangered" throughout its range. The following year, in light of inaction by the Service, the same scientist requested that the Sonoma and Santa Barbara

Salamanders be protected as distinct population segments on an emergency basis.  Many years after these petitions, the Service, in response to lawsuits filed by the Center and others, separately listed the Santa Barbara Salamander as "endangered" in 2000 via an emergency rule.

In 2002, the Center filed suit in the Northern District of California to compel the Service to protect both the Sonoma and Central California salamanders.  Center for Biological Diversity v. U.S. Fish and Wildlife Service, No. 02-0558 WHA (N. D. Cal.) ("Center for Biological Diversity I").  A consent decree in that case required the Service to issue final determinations on whether to list both the Sonoma Salamander and Central California Salamander under the ESA.  As a result of the consent decree, the Service listed the Sonoma Salamander as endangered in 2003 and listed the Central California Salamander as threatened in the August 4, 2004 Final Rule now challenged by Plaintiffs in this case.  In the August 4, 2004 Final Rule, the Service listed the Central California Salamander as threatened, but also purported to downlist the Sonoma and Santa Barbara Salamanders from endangered to threatened, eliminate their distinct population segment status, and adopt a special "4(d) Rule" exempting certain livestock activities from the usual "take" prohibitions of the ESA.

Following issuance of the August 4, 2004 Final Rule, the Center filed suit in the Northern District of California challenging these portions of the Rule.  Center for Biological Diversity, et el., v. U.S. Fish and Wildlife Service, et al., Civ. No. 04-4324 WHA (N. D. Cal.) ("Center for Biological Diversity II").  This case was related to Center for Biological Diversity I and was again adjudicated by Judge William H. Alsup.  After considering an administrative record of more than 30,000 pages, over 140 pages of briefing, and hours of oral argument, Judge Alsup issued a detailed 25-page opinion which invalidated the portions of the Service's Rule downlisting the Sonoma and Santa Barbara Salamanders and eliminating their distinct population segment status, but upheld the threatened listing and 4(d) Rule with respect to the Central California Salamander.  Ex. A, Attachment 1  (August 19, 2005 Order).  The Court also retained jurisdiction over challenges to any further rulemaking concerning this species.  Id. at 25.

In sum, ESA protection of the Central California Salamander has already been litigated in two prior cases before Judge Alsup. The Center initiated these cases, which included full adjudication of the same August 4, 2004 Final Rule challenged here. Thus, the Center should be allowed to intervene as a matter of right in this action. Moreover, as argued in Exhibit F, the Center's [Proposed] Motion to Transfer Venue to the Northern District of California, this case should be transferred to Judge Alsup in the Northern District of California for additional proceedings consistent with the Court's August 19, 2005 Order in <u>Center for Biological Diversity II</u>.

The Center's intervention is unopposed. Ex. A ¶¶ 2,3 (Siegel Dec.). The Center easily meets the test under Federal Rule of Civil Procedure 24(a) for intervention as of right, which is warranted whenever: (1) the application is timely; (2) the applicant has a legally protected interest in the action; (3) the action threatens to impair that interest; and (4) none of the existing parties adequately represent the would-be intervenor's interests. In this case, intervention is clearly timely as Federal Defendants' answer has not been filed. The Center also has a legally cognizable interest in the fate of the Central California Salamander, as evidenced by the Center's intense involvement in protection of this species over many years. Additionally, this suit clearly has the potential to prejudice the Center's interests. Plaintiffs here seek to invalidate the threatened status of the Central California Salamander, which would result in its no longer being protected under the ESA. Finally, the Center's interests are not adequately represented by Plaintiffs, nor are they protected by the Federal Defendants, who have only protected the California tiger salamander after multiple successful lawsuits by the Center.

As argued below, the Center's Motion to intervene as a Defendant should be granted.

## LEGAL FRAMEWORK

This case concerns the protection of the Central California Salamander under the Endangered Species Act ("ESA"), a law enacted by Congress to conserve endangered and threatened species and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). "The plain intent of Congress in enacting this statute was to halt and reverse the trend toward species

extinction, whatever the cost." <u>Tennessee Valley Authority v. Hill</u>, 437 U.S. 153, 184 (1978).

The ESA requires the Secretary of Interior, through his designee the U.S. Fish and Wildlife Service ("Service"), to determine whether any species is "endangered" or "threatened." Only those species that have been listed as "endangered" or "threatened" receive protection under the ESA. 16 U.S.C. § 1533(a). A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." <u>Id.</u> § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." <u>Id.</u> § 1532(20). The term "species" is defined broadly under the ESA to include "any subspecies of fish or wildlife or plants and <u>any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature.</u>" <u>Id.</u> § 1532(16) (emphasis added). Thus, a distinct population segment ("DPS") of a vertebrate species can be protected as a "species" under the ESA even though it has not formally been described as a "species" in the scientific literature.

Section 4 of the ESA sets forth a detailed process by which the Secretary of Interior must add to or modify the list of threatened and endangered species via notice and comment rulemaking. <u>Id.</u> § 1533. The process to list, de-list, or reclassify a species from endangered to threatened or vice-versa can begin either by citizen petition or by internal Service processes. Additionally, the Service is required to issue an emergency regulation, such as an emergency listing rule, to prevent an "emergency posing a significant risk to the well being of any species," when a species is faced with an imminent threat of extinction. <u>Id.</u> § 1533(b)(7). An emergency regulation remains in effect for up to 240 days, at which time the Service must issue a final rule, following notice and comment, to continue the protection. <u>Id.</u>

The Service must base all listing determinations "solely on the basis of the best scientific and commercial data available." <u>Id.</u> § 1533(b)(1)(A).

Once a species is listed under the ESA, an array of statutory protections applies. For example, Section 7 requires all federal agencies to "insure" that their actions neither "jeopardize the continued existence" of any listed species nor "result in the destruction or adverse

modification" of its "critical habitat." Id. § 1536(a)(2). In addition, the "take" of listed species is generally prohibited. Id. § 1538(a); 50 C.F.R. § 17.31(a). "Take" means "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). The Service may, however, permit "incidental" take on a case-by-case basis if it finds, among other things, that such take will be minimized and mitigated and that such take will not "appreciably reduce the likelihood of survival and recovery of the species." Id. § 1539(a).

Generally, the protections and requirements of the ESA apply to both threatened and endangered species, but a significant distinction between the "endangered" and "threatened" classifications relates to the applicability of the prohibition on "take." Section 9 of the ESA only directly prohibits the take of endangered species. Id. § 1538(a). For threatened species, Section 4(d) of the ESA requires the Service to issue "protective" regulations "necessary and advisable to provide for the conservation" of the species, which may include all the limits on "take" contained in Section 9. Id. § 1533(d). Pursuant to this authority, the Service promulgated a blanket regulation applying the "take" prohibitions of Section 9 to all threatened species. 50 C.F.R. § 17.31(a). Nevertheless, for threatened species, the Service may still substitute species-specific "protective" regulations for this general prohibition against "take." 50 C.F.R. § 17.31(c).

## FACTUAL AND PROCEDURAL HISTORY

The California tiger salamander (*Ambystoma californiense*) is an amphibian native to California and found nowhere else in the world. The biology and natural history of the three distinct population segments of the California tiger salamander are briefly reviewed in the Court's decision in Center for Biological Diversity II. Ex. A, Attachment 1 at 1-2 (August 19, 2005 Order). A great number of human-caused threats, including destruction and fragmentation of grassland and woodland habitat and seasonal wetlands, introduced species, and pollutants now threaten all three lineages of this ancient animal with extinction.

The procedural history which underlies this litigation was first set in motion in February, 1992, when the Service received a petition from Dr. H. Bradley Shaffer, the world's leading

scientific expert on the California tiger salamander, to list the species as endangered throughout its range in California. In August, 1993, Dr. Shaffer requested that the Service list the California tiger salamander populations in Sonoma and Santa Barbara Counties on an emergency basis. In April, 1994, the Service published a 12-Month Finding on Dr. Shaffer's petition, finding that listing of the California tiger salamander throughout its range in California was "warranted but precluded" by higher priority actions. Notice of Petition Finding, 59 Fed. Reg. 18353 (April 18, 1994).

For many years, the Service took no further action to protect the California tiger salamander, and it remained in the "warranted but precluded" purgatory without any formal protection under the ESA. Ultimately, lawsuits brought by the Center forced the Service to protect the Santa Barbara, Sonoma, and Central California salamanders.

**I.      PROTECTION OF THE SANTA BARBARA SALAMANDER AS "ENDANGERED"**

Following lawsuits brought by the Center and the Environmental Defense Center in Santa Barbara, on January 19, 2000, the Service promulgated an emergency rule protecting the Santa Barbara salamander. Emergency Rule to List the Santa Barbara County Distinct Population Segment of the California Tiger Salamander as Endangered, 65 Fed. Reg. 3096 (January 19, 2000). The Service determined that the Santa Barbara salamander should be designated as a distinct population segment because it was distinct from other California tiger salamander populations as well as biologically and ecologically significant. Id. at 3098-99. The Service also concluded that the Santa Barbara salamander was in "imminent danger of extinction" and required listing as "endangered" on an emergency basis. Id. at 4007-4008.

The emergency protections were permanently extended by a subsequent rule, published on September 21, 2000. Final Rule to List the Santa Barbara County Distinct Population of the California Tiger Salamander as Endangered, 65 Fed. Reg. 57242 (Sept. 21, 2000).

**II.     PROTECTION OF THE SONOMA SALAMANDER AS "ENDANGERED" ("CENTER FOR BIOLOGICAL DIVERSITY I")**

In the decade following the 1992 petition to list the California tiger salamander, the Service failed to take any action to protect the Sonoma or Central California salamanders, and the species continued to decline in these areas. In June, 2001, the Center petitioned the Service to list the Sonoma salamander on an emergency basis. When the Service failed to take any action on this petition, the Center filed litigation to compel the Service to protect both the Sonoma and Central California Salamanders. Center for Biological Diversity v. U.S. Fish and Wildlife Service, C-02-0558 WHA (N. D. Cal.) ("Center for Biological Diversity I").

A Consent Decree entered in Center for Biological Diversity I required the Service to submit a determination on the Center's petition to list the Sonoma salamander for publication in the Federal Register by July 15, 2002, and required that, if the Service determined that the Sonoma salamander warranted emergency listing, that the Service promulgate both an emergency listing rule and a subsequent final listing determination prior to the expiration of the emergency rule. Ex. A, Attachment 2 at 3-4, ¶¶ 1-4 (Stipulated Settlement Agreement and Consent Decree, June 6, 2002 in Center for Biological Diversity I.)

The Service listed the Sonoma salamander on an emergency basis on July 22, 2002. Emergency Rule Listing the Sonoma County Distinct Population Segment of the California Tiger Salamander as Endangered, 67 Fed. Reg. 47726 (July 22, 2002). The Service determined that the Sonoma salamander should be listed as a distinct population segment because it was distinct from other California tiger salamander populations as well as biologically and ecologically significant. Id. at 47729-47730. The Service found that the Sonoma salamander faced "a significant and immediate risk" of extinction, and listed it as endangered on an emergency basis. Id. at 47726.

On March 19, 2003, the Service permanently extended the protections of the emergency listing via a final listing rule for the Sonoma salamander. Determination of Endangered status for the Sonoma County Distinct Population Segment of the California Tiger Salamander; Final Rule, 68 Fed. Reg. 13498 (March 19, 2003).

III.    PLAINTIFFS' CHALLENGE TO THE LISTING OF THE SONOMA AND

**SANTA BARBARA SALAMANDERS ("<u>HOME BUILDERS I</u>")**

The lead Plaintiff in this case, Home Builders Association of Northern California, and other entities filed a lawsuit challenging the protection of the Sonoma and Santa Barbara Salamanders as endangered in the Eastern District of California on February 19, 2004.  Ex. A, Attachment 4 (Complaint in <u>Home Builders Association of Northern California, et al., v. Steven A. Williams, et al.</u>, Civ. No. 04-0345 LKK GGH ("<u>Home Builders I</u>".)  On April 9, 2004, the District Court granted the Center's and Environmental Defense Center's Motion to Intervene.  Ex. A, Attachment 5 (April 9, 2004 Order in <u>Home Builders I</u>).

Pursuant to the Consent Decree in <u>Center for Biological Diversity I</u>, the Service was to issue a final determination on whether the Central California Salamander should be listed under the ESA by May 15, 2004.  Ex. A, Attachment 2 at 4, ¶ 6 (Stipulated Settlement Agreement and Consent Decree, June 6, 2002 in <u>Center for Biological Diversity I</u>).  The Service did not issue a final determination by that date, but instead filed a motion for a six month extension of the deadline, which the Center opposed.  Following briefing and oral argument, Judge Alsup granted the Service a nine-week extension until July 23, 2004 to make a final determination.  Ex. A, Attachment 3 at 1 (June 14, 2004 Order in <u>Center for Biological Diversity I</u>).

On August 4, 2004, the Service issued the Final Rule which listed the Central California Salamander as threatened.  Determination of Threatened Status for the California Tiger Salamander; and Special Rule Exemption for Existing Routine Ranching Activities; Final Rule, 69 Fed. Reg. 47212 (August 4, 2004).  However, the August 4, 2004 Final Rule also purported to reclassify the Sonoma and Santa Barbara Salamanders from endangered to threatened and eliminate their distinct population segment status.  <u>Id.</u>  Based on this rulemaking, discussed further below, Home Builders filed a motion to dismiss their case challenging the endangered listings of the Sonoma and Santa Barbara Salamanders as moot.  This motion was granted and <u>Home Builders I</u> was dismissed on March 2, 2005.  Ex. A, Attachment 6 (March 2, 2005 Order in <u>Home Builders I</u>).

**IV.    FIRST CHALLENGE TO THE AUGUST 4, 2004 FINAL RULE CHALLENGED**

### IN THIS ACTION ("CENTER FOR BIOLOGICAL DIVERSITY II")

The Center filed a complaint on October 13, 2004 challenging the portions of the August 4, 2004 Final Rule that purported to reclassify the Santa Barbara and Sonoma salamanders from "endangered" to "threatened," and eliminate their separate listings as distinct population segments. Center for Biological Diversity, et al., v. U.S. Fish and Wildlife Service, et al., Civ. No. 04-4324 WHA (N.D.Cal.) ("Center for Biological Diversity II"). The Center also challenged the "4(d) Rule," which exempted certain ranching activities from the prohibitions of the Endangered Species Act as applied to all three salamanders. Center for Biological Diversity II was related to Center for Biological Diversity I and transferred to Judge William H. Alsup. Eleven of the Plaintiffs[1] in Home Builders I moved for intervention in Center for Biological Diversity II. This motion was granted. Ex A, Attachment 7 (May 31, 2005 Order in Center for Biological Diversity II).

The case was then fully litigated. Federal Defendants produced a six-volume administrative record consisting of well over 30,000 pages. The Court reviewed over 140 pages of substantive briefing, along with hundreds of pages of record excerpts. See Docket Nos. 47-60 in Civ. No. 04-4324 (N.D Cal.). The Court ordered supplemental briefing on two separate topics. See Docket Nos. 61-62 Civ. No. 04-4324 (N.D.Cal.). Following a lengthy summary judgment hearing, Judge Alsup issued a 25-page Opinion resolving the case. Ex. A, Attachment 1 (August 19, 2005 Order in Center for Biological Diversity II). The Court invalidated the reclassification of the Sonoma and Santa Barbara Salamanders from endangered to threatened and the elimination of their distinct population segment status, noting the unlawful political

---

[1] The Intervenors were the City of Rohnert Park, City of Santa Rosa, Blochman Union School District, Burbank Housing Development Corporation, Coalition of Labor, Agriculture and Business of Santa Barbara County, Cobblestone Homes, Inc., Grower-Shipper Vegetable Association of Santa Barbara and San Luis Obispo Counties, North Coast Builders Exchange, Northern California Engineering Contractors Association, Santa Maria Valley Chamber of Commerce, and Santa Rosa Chamber of Commerce. Plaintiffs in this case may be in privity with one or more of these Intervenors and therefore bound by the decision in Center for Biological Diversity II.

interference in the decision making process, which is required by statute to be based solely on the best scientific information.  Ex. A, Attachment 1 at 2-9, 19-23.

The Court upheld the designation of the Central California salamander as "threatened," (Ex. A, Attachment 1 at 16), the result that Plaintiffs now seek to re-litigate here.  The Court also upheld the Section 4(d) Rule with respect to the Central California salamander, but not as to the Sonoma or Santa Barbara salamanders.  Finally, the Court remanded the matter to the Service for any further rulemaking and retained jurisdiction over any review thereof.  Ex. A, Attachment 1 at 25.

Based on this procedural history, it is clear that the Center clearly meets the test for intervention as of right.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 24(a)(2) provides as follows:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The D.C. Circuit uses the following four-part test to evaluate motions to intervene as of right: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests."  S.E.C. v. Prudential Securities, Inc., 136 F.3d 153, 156 (D.C. Cir. 1998).  See also Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998).  In assessing these factors, it is relevant that the D.C. Circuit counsels for "a liberal application in favor of permitting intervention" under Rule 24(a).  Nuesse v. Camp, 385 F.2d 694, 702 (D.C. Cir. 1967).  See also The Wilderness Society v. Babbitt, 104 F. Supp.2d 10, 18 (D.D.C. 2000) (noting that "the D.C. Circuit has taken a liberal approach to intervention") (citing NRDC v. Costle, 561 F.2d 904, 910-911 (D.C. Cir.

1977)). Following its liberal application of Rule 24, this Court and the D.C. Circuit routinely grant conservation organizations' motions to intervene where they have an interest in pending litigation. [2]

## ARGUMENT

## I.    THE CENTER SHOULD BE PERMITTED TO INTERVENE AS OF RIGHT

The Center's intervention is unopposed.  Ex. A at ¶¶ 2,3 (Siegel Dec.).   The Center's Motion should be granted because the Center clearly meets the standard set forth in Federal Rules of Civil Procedure Rule 24(a)(2), and meets all four parts of the D.C. Circuit's test for intervention as reviewed below.  Just as the Court found in Home Builders I, the Center has timely demonstrated an interest in the protection of the California tiger salamander that may be impaired by this lawsuit, and the Center's interests are not adequately represented by the existing parties.  Ex. A, Attachment 5 (April 9, 2004 Order).

### A.    The Center's Motion to Intervene is Timely

Timeliness is determined by examining all the circumstances of a case.   Southern Christian Leadership Conference v. Kelley, 747 F.2d 777, 779 (D.C. Cir. 1984).

---

[2] See, e.g. George E. Warren Corp. v. EPA, 159 F.3d 616 (D.C. Cir. 1998), as amended by 164 F.3d 676 (D.C. Cir. 1999) (three environmental groups authorized to intervene on EPA's behalf in industry challenge to EPA air rules); Wilderness Society v. Morton, 463 F.2d 1261 (D.C. Cir. 1972) (Canadian environmental group allowed to intervene in U.S. environmental group's challenge to Interior Department's compliance with environmental procedures); National Coal Association v. Uram, 39 Env't Rep. Cas. (BNA) 1624 & n.2, 1994 U.S. Dist. LEXIS 16404, *1 & n.2 (D.D.C. 1994) (environmental group authorized to intervene in industry challenge to environmental rules, and to act as plaintiff in challenging other aspects of those rules); Kerr-McGee Corp. v. Hodel, 630 F. Supp. 621 (D.D.C. 1986), vacated as moot on other grounds 840 F.2d 68 (D.C. Cir. 1988) (environmental group authorized to intervene in industry litigation challenging alleged government inaction on mining leases).  Other Courts have reached similar results. See In re: Sierra Club, 945 F.2d 776 (4th Cir. 1991) (environmental groups could intervene as of right to protect interests in related administrative proceeding); Washington State Building & Construction Trades Council v. Spellman, 684 F.2d 627 (9th Cir. 1982), cert. denied 461 U.S. 913 (environmental group that sponsored initiative could intervene as of right in litigation over that law); California v. Bergland, 29 F.R.Serv.2d 144 (E.D. Cal. 1979) (environmental groups could intervene as of right in a case of first impression, since stare decisis effect could affect group's interests); U.S. v. Reserve Mining Co., 56 F.R.D. 408 (D. Minn. 1972) (environmental groups who sought to protect members' recreational and aesthetic interests could intervene as of right in federal action against polluter).

Here, less than 7 weeks have elapsed since Plaintiffs filed their complaint on May 17, 2006. Defendants have yet to answer plaintiffs' Complaint, no dispositive motions have been filed and no discovery has been taken. Because there has been no delay, the Center's motion is clearly timely. See, e.g., Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1916 at 435-39 and n.13 (1986) (noting that an application for intervention made before the parties have joined issue in the pleadings is "clearly timely"); Admiral Ins. Co. v. National Cas. Co., 137 F.R.D. 176, 177 (D.D.C. 1991) (holding a motion to intervene timely where "[t]he major substantive issues . . . have not yet been argued or resolved, and the movants filed their motions promptly").

**B.      The Center Has a Legally Protected Interest in the Subject Matter of This Action**

When assessing the interest requirement of Rule 24(a), the D.C. Circuit has adopted a liberal approach, looking to the "policies behind the 'interest' requirement" in the rule, and viewing the rule as a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." Nuesse v. Camp, 385 F.2d at 700; see also Foster v. Gueory, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (quoting Nuesse). This Circuit has observed that "[t]he right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." Hodgson v. United Mine Workers of America, 473 F.2d 118, 130 (D.C. Cir. 1972).

As is apparent from the procedural history described above, the Center and its members have a clear and legally cognizable interest in this action. It was the Center's advocacy and past lawsuits that compelled the Service to protect the Central California salamander in the first instance. The Center's primary mission is the protection of imperiled species such as the Central California salamander and its habitat. Ex. B at ¶ 2 (Declaration of Peter Galvin in Support of Intervenor-Applicant Center for Biological Diversity's Motion to Intervene as a Defendant and [Proposed] Motion to Transfer Venue to the Northern District of California ("Galvin Dec.")).

Further, the Center and its members and staff have significant professional and personal interests in the Central California Salamander, its habitat, and its protection.  Ex. C (Declaration of Douglas L. Bevington in Support of Intervenor-Applicant Center for Biological Diversity's Motion to Intervene as a Defendant and [Proposed] Motion to Transfer Venue to the Northern District of California ("Bevington Dec."); Ex. B (Galvin Dec.).

Both the Center and its members have demonstrated a long-standing interest in the protection of the Central California Salamander.  That interest easily provides a sufficient basis for intervention in this case.  See, e.g., Idaho Farm Bureau Fed'n. v. Babbitt, 58 F.3d 1392, 1397 (9th Cir. 1995) ("[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it had supported."); Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of the Interior, 100 F.3d 837, 841-44 (10th Cir. 1996) (individual's involvement with a species through his activities as a photographer, amateur biologist, naturalist, and conservation advocate amounted to sufficient interest for purpose of intervention in litigation covering the species' listing under the ESA); Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 526 (9th Cir. 1983) (environmental groups' "environmental, conservation and wildlife interests" were sufficient for intervention as a matter of right).

Stated another way, the Center's and its members' interest in preserving the California tiger salamander and it habitat, as well as the judicial precedent of Center for Biological II, easily demonstrates Article III standing.  See, e.g., Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 181-82 (2000) (harm to recreation opportunities constitutes injury in fact for purposes of standing); Lujan v. Defenders of Wildlife, 504 U.S. 555, 562-63 (1992) ("desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing").

The Center has standing to bring this action because:  1) its members have standing to sue in their own right; 2) the interests at stake are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires its members to participate directly in

the lawsuit.  See Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343 (1997); Ecological Rights Foundation v. Pacific Lumber Co., 230 F.3d 1141, 1147 (9th Cir. 2000).  Regarding element (1), members have standing to sue in their own right if "they have suffered an injury in fact that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical, . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Ecological Rights Foundation, 230 F.3d at 1147 quoting Friends of the Earth v. Laidlaw, 528 U.S. 167, 180-181 (2000).

In Center for Biological Diversity II, the Court analyzed these factors and concluded that the Center clearly has standing with regard to the same August 4, 2004 Final Rule challenged here. Ex. A,  Attachment 1 at 9-11 (August 19, 2005 Order).  This Court should not hesitate to do the same.

The continued existence of the Central California Salamander is extremely important to Center for Biological Diversity member Douglas Bevington, who derives scientific, academic, aesthetic, recreational, and other benefits from the existence of this unique animal. Ex. C at ¶¶ 4-6, 9 (Bevington Dec.).  Mr. Bevington will suffer concrete, particularized, actual, and imminent harm if Plaintiffs' lawsuit were to succeed, because the salamander is more likely to continue to decline and to become extinct with weakened protections.  Id. at ¶¶ 8-9.  These injuries can be prevented if the lawsuit is not successful.  Center for Biological Diversity member and Director Peter Galvin is similarly harmed by this lawsuit. Ex. B at ¶¶  6-9 (Galvin Dec.).

Just as the Court found in Center for Biological Diversity II,

Plaintiffs satisfy the remaining elements for standing as an association.  As discussed above, their members would otherwise have standing to sue in their own right.  In addition, the interests at stake are germane to the purpose of [the Center]: to save the species from extinction.  Finally, [the Center], as shown during this litigation, [is] capable of litigating this case vigorously without member participation.

Ex. A, Attachment 1 at 11 (August 19, 2005 Order).

**C.     This Action Threatens to Impair the Center's Interests**

Rule 24(a)'s "impairment" requirement concerns whether, as a practical matter, the denial of intervention will impede the prospective intervenor's ability to protect its interests in the subject of the action.  As the Advisory Committee Notes for the 1966 amendments to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."  In keeping with this direction, the D.C. Circuit has observed that the rule's emphasis on "practical disadvantage" was "designed to liberalize the right to intervene in federal actions."  <u>Nuesse</u>, 385 F.2d at 701-02.

There is no question that the disposition of Plaintiff's claim has the potential to impair the Center's interests.  The Center's interests will be directly and adversely affected by the relief Plaintiffs seek: vacating the final rule designating the Central California Salamander as a threatened species.  If Plaintiffs were to succeed, the Central California Salamander would lose the protection it currently enjoys under the ESA.

Courts have repeatedly found sufficient impairment to sustain intervention for environmental groups in suits such as this.  In <u>Idaho Farm Bureau Federation</u>, the Ninth Circuit held that a disposition of the action in favor of plaintiffs resulting in the delisting of the Bruneau Hot Springs Snail "would impair [intervenor's] ability to protect their interest in the Springs Snail and its habitat."  58 F.3d at 1398.  In <u>Coalition of Arizona/New Mexico Counties for Stable Economic Growth</u>, the Tenth Circuit held that intervenor's interest in the protection of the Mexican spotted-owl would, "as a practical matter," be impaired by a ruling in favor of the plaintiffs to delist the owl "by the stare decisis effect of the district court's decision, not to mention the direct effect of a possible permanent injunction."  100 F.3d at 844.

Further, the Center and its members and staff will be harmed both professionally and personally if the Central California Salamander is no longer protected under the ESA.  Ex. B at ¶¶ 6-9 (Galvin Dec.); Ex. C at ¶¶ 5-9 (Bevington Dec.).  In addition, if the Center is not allowed to intervene in this action, its ability to carry out its missions and protect its members' interests will be significantly impaired.  Ex. B at ¶ 9 (Galvin Dec.).  Because the Center is so situated that

the disposition of this action may as a practical matter impair its ability to protect its interests in the Central California salamander, the Center satisfies the third requirement of intervention as of right.

### D.    The Center's Interests Are Not Adequately Represented by the Existing Parties

The Supreme Court has explained that the "inadequate representation" requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n. 10 and acc. text (1972) (citation omitted).  Under this lenient approach, representation may be inadequate where the interests of the party seeking intervention and those of the existing party are "different," even if they are not "wholly 'adverse,'" Nuesse, 385 F.2d at 703, or where they are "similar but not identical." American Tel. & Tel. Co., 642 F.2d 1285, 1293 (D.C. Cir. 1980).  Indeed, "the [D.C. Circuit] Court of Appeals has stated that 'the burden is on those opposing intervention to show that representation for the absentee will be adequate.'" Alexander v. FBI, 186 F.R.D. 21, 31 (D.D.C. 1998) (quoting American Tel. & Tel., 642 F.2d at 1293).

This standard is met here.  First, as discussed above, the Center was required to sue the Service to get the challenged rules and protections in place for the Central California Salamander in the first instance, and therefore it is very unlikely that the Service will present all of the arguments that the Center would.  See, e.g., Idaho Farm Bureau Federation, supra, 58 F.3d at 1398 ("FWS was unlikely to argue on behalf of [applicants], the very organizations that compelled FWS to make a final decision by filing a lawsuit.  FWS would not have adequately represented [applicant]'s interests."); County of Fresno v. Andrus, 622 F.2d 436, 439 (9th Cir. 1980) ("[T]here is further reason to doubt that the Department [of the Interior] will fully protect [the applicant's] interest . . . in light of the fact that the Department began its rulemaking only reluctantly after [the applicant] brought a law suit against it.").

The lengthy process leading to full protection for all three California tiger salamander distinct population segments has been punctuated with political controversy and interference. The Court's decision in <u>Center for Biological Diversity II</u> highlighted the impermissible political interference from Department of Interior appointees that resulted in the portions of the August 4, 2004 Final Rule that decreased protections for the Sonoma and Santa Barbara Salamanders. Ex. A, Attachment 1 at 3-9, 22 (August 19, 2005 Order). The Court ultimately concluded: "Finally, the irregular way in which the down-listing occurred counsels in favor of vacatur. It would be unseemly for a court to leave in place a rule that was so riddled with error. Also, for these reasons…it would be unseemly to allow a voluntary remand as requested by the agency." <u>Id.</u> at 24. The fact that the Court did not trust the agency with a voluntary remand after fully reviewing the administrative record in that case demonstrates how unlikely it is that the agency will make all of the Center's arguments in this case. The Center also seeks intervention in order to object to any settlement that is contrary to the purposes of the ESA, illegal, or unreasonable.

The D.C. Circuit has frequently recognized that governmental representation of private intervenors may be inadequate, particularly where the private intervenors can be expected to make different arguments from their governmental counter-parts. <u>Dimond</u>, 792 F.2d at 193; <u>see also</u> <u>Forest Conservation Council v. United States Forest Service</u>, 66 F.3d 1489, 1498-99 (9th Cir. 1985) (Defendant U.S. Forest Service could not be expected to make all the arguments of proposed intervenors). There are also substantive legal ESA issues upon which the Center and the Service have disagreed in litigation in the past, and which could arise in this litigation. Overall, the test of whether the Service *may not* represent the Center's interests is more than met in this instance, where it can be said with relative certainty that the Service *will not* adequately represent the Center's interests.

For these reasons, this Court should not hesitate to grant intervention as of right pursuant to Rule 24(a).

## II.    IN THE ALTERNATIVE TO INTERVENTION OF RIGHT, PERMISSIVE INTERVENTION IS WARRANTED

Should this Court find that the Center is not entitled to intervene as of right under Rule 24(a), the Center moves that this Court grant permission to intervene pursuant to Federal Rule of Civil Procedure 24(b).  Rule 24(b)(2) provides that:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The D.C. Circuit has stated that permissive intervention may be granted in the court's discretion if the proposed Intervenor presents "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." E.E.O.C. v. National Children's Center, Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998).  Additionally, permissive intervention must not "delay or prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P. 24(b)(2).  Like intervention of right, permissive intervention is to be granted liberally.  E.E.O.C., 146 F.3d at 1045 (permissive intervention granted where intervenor has substantial interest at stake even if no common claim or defense claimed; "flexible interpretations" of rule appropriate in favor of intervention); Nuesse, 385 F.2d at 704-06 (D.C. Circuit eschews strict reading of rules to advance policy favoring liberal allowance of permissive intervention).

The Center easily meets all of these requirements.  As discussed above in the context of intervention as of right, the Center's application is timely and existing parties will not be prejudiced.  The Court has jurisdiction over the Center and its defenses, as they all involve issues of federal law in defending against the Plaintiffs' claims under federal law.  Lastly, the Center's defenses are in common with Plaintiffs' claims both in law and fact, as they address the exact matter raised by Plaintiffs.

## CONCLUSION

For the reasons set forth above, the Center respectfully requests that this Court grant its motion to intervene as of right or, in the alternative, permissive intervention.

Respectfully submitted this 30th day of June, 2006.

/s/ Erin M. Tobin

Erin M. Tobin
(D.C. Bar No. 494948)
Katherine A. Meyer
(D.C. Bar No. 244301)

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20009
(202) 588-5206
(202) 588-5049 fax

Kassia Siegel (Pro Hac Vice Applicant)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Telephone:  760-366-2232
Facsimile:  760-366-2669

Attorneys for Intervenor-Defendant-Applicant Center for
Biological Diversity

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **HOME BUILDERS ASSOCIATION OF NORTHERN CALIFORNIA, et al.,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**U.S. FISH AND WILDLIFE SERVICE et al.,**<br><br>**Defendants,**<br><br>and<br><br>**CENTER FOR BIOLOGICAL DIVERSITY,**<br>**1333 N. Oracle Rd.**<br>**Tucson, AZ  85705**<br><br>**Intervenor-Defendant –Applicant.** | **Civ. No. 06-00932 (RWR)** |

**[PROPOSED] ORDER GRANTING INTERVENTION**

Having reviewed the Center for Biological Diversity's Motion for Intervention as a Defendant, Memorandum of Points and Authorities in support of its motion and supporting declarations, the responses and replies thereto, and the entire file in this case, the Court hereby finds that pursuant to Fed. R. Civ. P. 24(a), and for good cause shown, the Center for Biological Diversity is entitled to intervene as a matter of right as a defendant in this case.  Accordingly, it is hereby:

ORDERED that the Center for Biological Diversity's Motion to Intervene as a Matter of Right as a Defendant in this case is GRANTED.

ORDERED that the Center for Biological Diversity's Motion to Transfer Venue to the Northern District of California is deemed filed as of this date;

ORDERED that the Center for Biological Diversity's Motion for Kassia R. Siegel to appear pro hac vice is deemed filed as of this date;

IT IS SO ORDERED this _____ day of _____, 2006.


_____

UNITED STATES DISTRICT COURT JUDGE

LOCAL RULE 7(k) LIST OF PERSONS TO BE SERVED WITH ORDER

Please serve the following electronically:

Erin Tobin
Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, Suite 700
Washington, D.C. 20009
Telephone:  202-588-5206
Facsimile:  202-588-5049
Email:  erintobin@meyerglitz.com

William P. Horn
BIRCH, HORTON, BITTNER AND CHEROT
1155 Connecticut Avenue, NW
Suite 1200
Washington, DC 20036
(202) 659-5800
Fax: (202) 659-1027
Email: bhorn@dc.bhb.com

Joseph H. Kim, Trial Attorney
U.S. Dept. of Justice
Environment & Natural Resource Division
Wildlife & Marine Resources Section
P.O. Box 7369
Washington D.C. 20044-7369
(202) 305-0207 (phone)
(202) 305-0275 (fax)
Email:  joseph.kim@usdoj.gov