# Exhibit A, Attachment 3
# Civ. No. 06-00932 (RWR)

FILED

2004 JUN 14 PM 3: 35

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES FISH & WILDLIFE SERVICE,<br><br>    Defendant. | No. C 02-00558 WHA<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO EXTEND DEADLINE IN STIPULATED SETTLEMENT AGREEMENT AND CONSENT DECREE** |

## INTRODUCTION

On June 6, 2002, a consent decree was entered in this case to protect the Central California Tiger Salamander. The decree provided a deadline of May 15, 2004, for the United States Fish and Wildlife Service to make a final listing determination under the Endangered Species Act, 16 U.S.C. 1533. In early May, defendant was in the final stages of making a final listing determination. Due to a series of letters sent by plaintiff and the Central California Tiger Salamander Coalition, defendant determined that there was a substantial disagreement regarding the scientific data used to make its final determination. Defendant now requests an extension of the deadline to November 15, 2004, based on this newly-arisen scientific disagreement. Defendant's motion is **GRANTED IN PART**. Defendant is given an extension for the specific purpose of resolving the issue of whether there was a fourteen percent *decrease* versus one percent *increase* in land available for salamander habitat. Defendant must list its final determination by **JULY 23, 2004**.

**STATEMENT**

On January 31, 2002, plaintiff filed this action to compel defendant to list the tiger salamander as an endangered species. On June 6, 2002, the parties negotiated a stipulated settlement agreement and consent decree. The consent decree set out May 15, 2004, as the deadline for defendant to make a final listing determination. Relevant to this motion, the consent decree also contained a provision which stated that the Court would "retain jurisdiction to oversee compliance with the terms of this Agreement to allow any party to enforce the terms of the stipulated settlement and to resolve any motions to modify such terms" (Consent Decree ¶ 11). Another relevant provision described the method through which disputes were to be resolved (*id.* ¶ 13) ("[T]he party raising the dispute shall give written notice to the other party . . . the parties shall consult and negotiate with each other in good faith . . . if the parties do not resolve the controversy to their mutual satisfaction within 10 working days from the date on which the notice of controversy is delivered, the aggrieved party may file a motion for relief to be adjudicated by the Court.").

On June 6, 2002, a hearing was held to approve the consent decree. At this hearing, counsel for intervenor Sonoma County Farm Bureau raised an objection concerning the deadline of May 15, 2004. In response to this objection, the Court said an extension would be granted if the statutory grounds existed:

> Because while you may not contemplate that you need the additional time now, you can't see everything perfectly into the future. So I am going to make — it's not exactly sustaining the objection, but I am going to overrule the objection with the understanding that I have just given you, which is that *if the agency needs the additional time at the end of May 15, 2003 — I'm sorry, 04 or leading up to it, you ought to ask for the additional six months **if the statutory grounds exist**, and remind me that I said that in today's hearing."

Tr. 27–28 (emphasis added).

\* \* \*

In late April 2004, the Central California Tiger Salamander Coalition sent two letters to defendant, alleging new scientific data concerning salamander habitat. The Coalition is a lobbying group that represents such interests as the California Building Industry Association,

2

Home Builders Association of Northern California, International Council of Shopping Centers, California Farm Bureau Federation, and the California Association of Winegrape Growers. As the May 15, 2004, deadline drew near, defendant was prepared to make a final listing determination. A draft final determination was in the final stages of review at the beginning of May 2004 (Manson Decl. ¶ 4). But on May 5, 2004, plaintiff sent additional comments regarding scientific data of tiger salamander habitat to defendant. These comments consisted of a twenty-page letter and a box of attachments. At the hearing on the instant action, plaintiff said the data contained in this letter was duplicative of the data already present in the record. Plaintiff sent the letter to have the information in the record for purposes of appeal. On May 6, 2004, defendant received additional comments from the Coalition. On May 13, 2004, Craig Manson, Assistant Secretary for Fish and Wildlife, determined that there was a "substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination" (*id.* ¶ 7). Secretary Manson based this determination on the conflict created by the newly received information from plaintiff and the Coalition, as well as the comments received during the comment period (*ibid.*). On May 13, 2004, defendant contacted plaintiff to discuss an extension on the final listing determination based on the newly-received information from plaintiff and the Coalition. Plaintiff opposed the extension. The next day, defendant filed the instant motion. Defendant also filed a motion to shorten time for noticing the hearing so the matter could be heard June 10, 2004.

At the hearing on June 10, 2004, the Court made inquiry into whether the scientific data raised in the letters had been previously submitted during the relevant comment period. Deputy Assistant Secretary Julie McDonald stated that there was new data about the amount of available habitat that had not been previously submitted. She stated that the extension request was based on this new data revealed in the letters from plaintiff and the Coalition. Specifically, the data in the letter from the Coalition stated that there was a one percent *increase* in habitat for the salamander from 2000–2002 as determined by the California Department of Conservation. This new information was in conflict with original data that showed a fourteen percent *decrease* in available land suitable for habitat. Defendant had relied on this fact of a fourteen percent

3

decrease in available habitat to determine its listing decision. When defendant received the letters which purported a one percent increase, Assistant Secretary McDonald stated that this conflict was significant enough to request more time to investigate the matter.

## ANALYSIS

1. **THE CONSENT DECREE WAS APPROVED ON THE CONDITION THAT DEFENDANT WOULD RECEIVE AN EXTENSION IF STATUTORY GROUNDS EXISTED.**

The standard for granting an extension is whether "there is a substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination or revision concerned." 16 U.S.C. 1533(b)(6)(B)(i). The question raised is whether a statutory basis under Section 1533(b)(6)(B)(i) has been established. According to plaintiff, defendant has not met its burden. Plaintiff bases this argument on guidelines listed in an internal handbook for Service employees. The handbook, titled *Endangered Species Listing Handbook: Procedural Guidance for the Preparation and Processing of Rules and Notices Pursuant to the Endangered Species Act*, suggests that Section 1533(b)(6)(B)(i) can only be invoked if there is a "substantial disagreement among *scientists* knowledgeable about the species concerned regarding the sufficiency or accuracy of the available data relevant to the determination or revision concerned" (Siegel Decl. Exh. B). Plaintiff argues that the substantial disagreement must be among scientists knowledgeable about the species concerned. It contends that "neither the author of the May 5, 2004 Coalition letter, attorney Robert J. Uram, nor any of his clients are 'scientists knowledgeable about the CTS'" (Opp. 15).

Plaintiff's argument is not correct. It is true that the recent letters that brought about this dispute were written by attorneys and may contain legal arguments. Nevertheless, the letters do raise an issue concerning scientific data. This data may be considered in determining whether there is a substantial disagreement about the sufficiency or accuracy of the data. Here, defendant states that the letters offers conflicting data on the amount of habitat land available to the salamander. Where prior data showed a fourteen percent *decrease* in land, the new data suggests that there is now a one percent *increase* in land available to the salamander. The

4

1 Coalition suggests that this increase is due to the fact that land is now being abandoned from its
2 prior uses, thus creating more grazing land.
3   The suggestion that previously-used land is now reverting back to grazing land is,
4 perhaps, dubious. The passing of time naturally results in more development and progress, not
5 less. Nevertheless, defendant is obligated to make its final determination in a professional
6 manner, considering all of the best available data to its full extent. Defendant needs time to
7 resolve this potentially significant point.
8   When the consent decree was approved, the Court recognized that defendant could need
9 additional time as the May 15, 2004, deadline approached. The Court stated that the extension
10 would be given *if the statutory grounds existed* (Tr. 30). Although there was the concern that
11 the parties could invoke the extension to unjustifiably delay the final listing, the Court
12 specifically reserved the right for defendant to ask for an extension based upon Section
13 1533(b)(6)(B)(i). Plaintiff concedes this fact (Opp. 13) ("The Court did later state that a
14 legitimate scientific disagreement meeting the statutory criteria for an extension pursuant to 16
15 U.S.C. 1533(b)(6)(B)(i) would be a legitimate reason for requesting an extension."). Upon
16 approval of the decree, the Court admonished the parties to "honor these dates" but specifically
17 mentioned the potential for an extension if appropriate (Tr. 31). The Court did not pre-approve
18 an extension. Defendant was still required to establish a statutory basis for the extension. Here,
19 defendant has shown that there is a substantial disagreement over whether there was a
20 fourteen percent decrease versus one percent increase in available habitat. This issue is relevant
21 to the final listing determination. Defendant will be given an opportunity to resolve this issue.
22                           *       *       *
23   Plaintiff offers additional counterarguments. This order rejects them. Plaintiff contends
24 that defendant violated the dispute-resolution provision of the consent decree because it failed to
25 provide written notice at least ten days before filing the motion. This argument is not persuasive
26 because defendant did not have ten days to give notice. The exchange of letters took place less
27 than ten days before the deadline. Defendant had no way to review the twenty-page letter and
28 box of attachments sent by plaintiff and make a good-faith determination of whether there was a

## CONCLUSION

For the foregoing reasons, defendant's motion to extend the deadline in the stipulated settlement agreement and consent decree is **GRANTED IN PART**. This extension is given only for the purpose of resolving the substantial disagreement pertaining to the availability of salamander habitat. Defendant must make a final listing determination by **JULY 23, 2004**. Defendant should act as efficiently as possible to meet this deadline. Please do not ask for any more extensions.

**IT IS SO ORDERED.**

Dated: June 14, 2004.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE