# Exhibit F
# Civ. No. 06-00932 (RWR)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **HOME BUILDERS ASSOCIATION OF NORTHERN CALIFORNIA, et al.,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**U.S. FISH AND WILDLIFE SERVICE et al.,**<br><br>**Defendants,**<br><br>**and**<br><br>**CENTER FOR BIOLOGICAL DIVERSITY,**<br>**1333 N. Oracle Rd.**<br>**Tucson, AZ  85705**<br><br>**Intervenor-Defendant –Applicant.** | **Civ. No. 06-00932 (RWR)** |

**INTERVENOR-APPLICANT CENTER FOR BIOLOGICAL DIVERSITY'S
[PROPOSED] MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF
CALIFORNIA**

Pursuant to 28 U.S.C. Section 1404(a), the Center for Biological Diversity ("Center") hereby moves this Court to transfer this case to the United States District Court for the Northern District of California.  Counsel for Federal Defendants has informed counsel for the Center that the Federal Defendants do not take any position at this time on the transfer of this case to the Northern District of California.  Counsel for Plaintiffs has informed counsel for the Center that Plaintiffs oppose the transfer of this case to the Northern District of California.

This motion is based on the attached Memorandum of Points and Authorities in support thereof, as well as the declarations of Peter Galvin, Douglas Bevington, and Kassia R. Siegel, filed concurrently, the pleadings, and any other matters that may be submitted to the Court during oral argument.

Respectfully submitted this 30th day of June, 2006.

/s/ Erin M. Tobin
_____

Erin M. Tobin
(D.C. Bar No. 494948)
Katherine A. Meyer
(D.C. Bar No. 244301)

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20009
(202) 588-5206
(202) 588-5049 fax

Kassia Siegel (Pro Hac Vice Applicant)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Telephone:  760-366-2232
Facsimile:  760-366-2669

Attorneys for Intervenor-Defendant-Applicant Center for Biological Diversity

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **HOME BUILDERS ASSOCIATION OF NORTHERN CALIFORNIA, <u>et al</u>.,** | **Civ. No. 06-00932 (RWR)** |
| **Plaintiffs,** | |
| **vs.** | |
| **U.S. FISH AND WILDLIFE SERVICE <u>et al</u>.,** | |
| **Defendants,** | |
| **and** | |
| **CENTER FOR BIOLOGICAL DIVERSITY, 1333 N. Oracle Rd. Tucson, AZ  85705** | |
| **Intervenor-Defendant-Applicant.** | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
[PROPOSED] MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF
CALIFORNIA**

Pursuant to 28 U.S.C. Section 1404(a), the Center for Biological Diversity ("Center") submits this Memorandum of Points and Authorities in support of its [Proposed] Motion Transfer Venue to the Northern District of California.

# INTRODUCTION

In this case, Plaintiffs challenge the same final Endangered Species Act listing regulation for the California tiger salamander that has just been fully adjudicated in a case brought by Intervenor-Defendant Center for Biological Diversity in the U.S. District Court for the Northern District of California.  In <u>Center for Biological Diversity, et al. v. U.S. Fish and Wildlife Service, et al.</u>, Civ. No. 04-4324 WHA (N. D. Cal.), Judge William Alsup fully considered the August 4, 2004 Final Rule challenged here and held "*First*, the designation of the Central California tiger

salamander as 'threatened' is sustained."    Ex. A[1], Attachment 1 at 16 (August 19, 2005 Order) (emphasis in original).    Judge Alsup further retained jurisdiction to hear any challenges to future rulemakings concerning this species.    Id. at 25.    Plaintiffs here now seek to re-challenge the listing of the Central California tiger salamander as "threatened" before this Court, presenting a great risk of inconsistent results and waste of resources by both the Courts and the Parties. Therefore, the Center seeks to transfer venue to Judge Alsup in the Northern District of California.

Counsel for Federal Defendants has informed counsel for the Center that the Federal Defendants take no position at this time on the transfer of this case to the Northern District of California.    Ex. A at ¶ 2 (Siegel Dec.).    Counsel for Plaintiffs has informed counsel for the Center that Plaintiffs intend to oppose the transfer of this case to the Northern District of California. Ex. A at ¶ 3 (Siegel Dec.).

This case concerns the California tiger salamander, an amphibian adapted to the grasslands, oak woodlands, and seasonal wetlands of California, and found nowhere else in the world.    There are three "distinct population segments" of the California tiger salamander, each of which is listed separately under the ESA.    The Center's advocacy and litigation over a number of years has led to the protection of all three distinct population segments.    The subject of this lawsuit, the Central California distinct population segment of the California tiger salamander ("Central California Salamander"), historically occurred throughout the Great Central Valley and Coast Ranges of California, and is listed as "threatened" under the ESA.    The Sonoma County distinct population segment of the California tiger salamander ("Sonoma Salamander") occurs only in Sonoma County and is listed as "endangered."    The Santa Barbara distinct population segment ("Santa Barbara Salamander") is found only in Santa Barbara County and is also listed

---

[1] Declaration of Kassia R. Siegel in Support of Intervenor-Applicant Center for Biological Diversity's Motion to Intervene as a Defendant and [Proposed] Motion to Transfer Venue to the Northern District of California ("Siegel Dec."). The declarations submitted as exhibits to the Center's Motion to Intervene and their attachments are also referenced throughout this memorandum.

as "endangered."

In 2002, the Center filed suit in the Northern District of California to compel the Service to protect both the Sonoma and Central California salamanders. Center for Biological Diversity v. U.S. Fish and Wildlife Service, No. 02-0558 WHA (N. D. Cal.) ("Center for Biological Diversity I"). A consent decree in that case required the Service to issue final determinations on whether to list both the Sonoma Salamander and Central California Salamander under the ESA. As a result of the consent decree, the Service listed the Sonoma Salamander as endangered in 2003 and listed the Central California Salamander as threatened in the August 4, 2004 Final Rule now challenged by Plaintiffs in this case. In the August 4, 2004 Final Rule, the Service listed the Central California Salamander as threatened, but also purported to downlist the Sonoma and Santa Barbara Salamanders from endangered to threatened, eliminate their distinct population segment status, and adopt a special "4(d) Rule" exempting certain activities from the usual "take" prohibitions of the ESA.

Following issuance of the August 4, 2004 Final Rule, the Center filed suit in the Northern District of California challenging the portions of the Final Rule that decreased protection for the species. Center for Biological Diversity, et el., v. U.S. Fish and Wildlife Service, et al., Civ. No. 04-4324 WHA (N. D. Cal.) ("Center for Biological Diversity II"). This case was related to Center for Biological Diversity I and was again adjudicated by Judge William H. Alsup. After considering an administrative record of more than 30,000 pages, over 140 pages of briefing, and hours of oral argument, Judge Alsup issued a detailed 25-page opinion which invalidated the portions of the August 4, 2004 Final Rule downlisting the Sonoma and Santa Barbara Salamanders and eliminating their distinct population segment status, but upheld the threatened listing and 4(d) Rule with respect to the Central California Salamander. Ex. A, Attachment 1 (August 19, 2005 Order). The Court also retained jurisdiction over challenges to any further rulemaking concerning this species. Id. at 25.

Because ESA protection of the Central California Salamander has already been litigated in two prior cases before Judge Alsup, this case should be transferred to Judge Alsup in the

Northern District of California for additional proceedings consistent with the Court's August 19, 2005 Order in <u>Center for Biological Diversity II</u>.

Under 28 U.S.C. Section 1404(a), courts have broad discretion to order an action transferred, so long as that action could have originally been brought in the forum to which transfer is sought.  In this case, Plaintiffs clearly could have filed their suit in the Northern District of California.  The Central California Salamander and a significant portion of its habitat occur in this judicial district, all three Plaintiffs are California corporations, and Plaintiff Home Builders of Northern California ("Home Builders") resides in the Northern District of California.

Once this basic threshold has been met, courts should consider both the private interests and the interests of justice in deciding whether to transfer a case.  The interests of justice, including the transferee court's familiarity with the law and facts, the relative congestion of the courts, and the local interest in deciding local controversies at home, overwhelmingly favor transfer to the Northern District of California.  Courts consider these issues paramount, and they can outweigh private interests that do not favor transfer.  However, in this case, the private interests, including the plaintiffs' choice of forum, defendants' choice of forum, where the claim arose, the convenience of the parties, the convenience of the witnesses, and the ease of access to sources of proof, also all weigh in favor of transfer.  All of the Plaintiffs and the agency scientists involved with the Final Rule at issue are located in California.  The District of Columbia has no meaningful ties to this case.  Transfer will greatly conserve judicial resources, avoid inconsistent judgments, and avoid forum shopping by Plaintiffs seeking to avoid the preclusive effect of the already-decided case.

As argued below, the Center's Motion to transfer to the Northern District of California should be granted.

## LEGAL FRAMEWORK

This case concerns the protection of the Central California Salamander under the Endangered Species Act ("ESA"), a law enacted by Congress to conserve endangered and threatened species and the ecosystems upon which they depend.  16 U.S.C. § 1531(b).  "The

plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost." Tennessee Valley Authority v. Hill, 437 U.S. 153, 184 (1978).

The ESA requires the Secretary of Interior, through his designee the U.S. Fish and Wildlife Service ("Service"), to determine whether any species is "endangered" or "threatened." Only those species that have been listed as "endangered" or "threatened" receive protection under the ESA. 16 U.S.C. § 1533(a). A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." Id. § 1532(6). A species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." Id. § 1532(20). The term "species" is defined broadly under the ESA to include "any subspecies of fish or wildlife or plants and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." Id. § 1532(16) (emphasis added). Thus, a distinct population segment ("DPS") of a vertebrate species can be protected as a "species" under the ESA even though it has not formally been described as a "species" in the scientific literature.

Section 4 of the ESA sets forth a detailed process by which the Secretary of Interior must add to or modify the list of threatened and endangered species via notice and comment rulemaking. Id. § 1533. The process to list, de-list, or reclassify a species from endangered to threatened or vice-versa can begin either by citizen petition or by internal Service processes. Additionally, the Service is required to issue an emergency regulation, such as an emergency listing rule, to prevent an "emergency posing a significant risk to the well being of any species," when a species is faced with an imminent threat of extinction. Id. § 1533(b)(7). An emergency regulation remains in effect for up to 240 days, at which time the Service must issue a final rule, following notice and comment, to continue the protection. Id.

The Service must base all listing determinations "solely on the basis of the best scientific and commercial data available." Id. § 1533(b)(1)(A).

Once a species is listed under the ESA, an array of statutory protections applies. For example, Section 7 requires all federal agencies to "insure" that their actions neither "jeopardize

the continued existence" of any listed species nor "result in the destruction or adverse modification" of its "critical habitat." Id. § 1536(a)(2). In addition, the "take" of listed species is generally prohibited. Id. § 1538(a); 50 C.F.R. § 17.31(a). "Take" means "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). The Service may, however, permit "incidental" take on a case-by-case basis if it finds, among other things, that such take will be minimized and mitigated and that such take will not "appreciably reduce the likelihood of survival and recovery of the species." Id. § 1539(a).

Generally, the protections and requirements of the ESA apply to both threatened and endangered species, but a significant distinction between the "endangered" and "threatened" classifications relates to the applicability of the prohibition on "take." Section 9 of the ESA only directly prohibits the take of endangered species. Id. § 1538(a). For threatened species, Section 4(d) of the ESA requires the Service to issue "protective" regulations "necessary and advisable to provide for the conservation" of the species, which may include all the limits on "take" contained in Section 9. Id. § 1533(d). Pursuant to this authority, the Service promulgated a blanket regulation applying the "take" prohibitions of Section 9 to all threatened species. 50 C.F.R. § 17.31(a). Nevertheless, for threatened species, the Service may still substitute species-specific "protective" regulations for this general prohibition against "take." 50 C.F.R. § 17.31(c).

## FACTUAL AND PROCEDURAL HISTORY

The California tiger salamander (*Ambystoma californiense*) is an amphibian native to California and found nowhere else in the world. The biology and natural history of the three distinct population segments of the California tiger salamander are briefly reviewed in the Court's decision in Center for Biological Diversity II. Ex. A, Attachment 1 at 1-2 (August 19, 2005 Order). A great number of human-caused threats, including destruction and fragmentation of grassland and woodland habitat and seasonal wetlands, introduced species, and pollutants now threaten all three lineages of this ancient animal with extinction.

The procedural history which underlies this litigation was first set in motion in February,

1992, when the Service received a petition from Dr. H. Bradley Shaffer, the world's leading scientific expert on the California tiger salamander, to list the species as endangered throughout its range in California.  In August, 1993, Dr. Shaffer requested that the Service list the California tiger salamander populations in Sonoma and Santa Barbara Counties on an emergency basis.  In April, 1994, the Service published a 12-Month Finding on Dr. Shaffer's petition, finding that listing of the California tiger salamander throughout its range in California was "warranted but precluded" by higher priority actions.  Notice of Petition Finding, 59 Fed. Reg. 18353 (April 18, 1994).

For many years, the Service took no further action to protect the California tiger salamander, and it remained in the "warranted but precluded" purgatory without any formal protection under the ESA.  Ultimately, lawsuits brought by the Center forced the Service to protect the Santa Barbara, Sonoma, and Central California salamanders.

**I.**     **PROTECTION OF THE SANTA BARBARA SALAMANDER AS "ENDANGERED"**

Following lawsuits brought by the Center and the Environmental Defense Center in Santa Barbara, on January 19, 2000, the Service promulgated an emergency rule protecting the Santa Barbara salamander.  Emergency Rule to List the Santa Barbara County Distinct Population Segment of the California Tiger Salamander as Endangered, 65 Fed. Reg. 3096 (January 19, 2000).  The Service determined that the Santa Barbara salamander should be designated as a distinct population segment because it was distinct from other California tiger salamander populations as well as biologically and ecologically significant.  Id. at 3098-99.  The Service also concluded that the Santa Barbara salamander was in "imminent danger of extinction" and required listing as "endangered" on an emergency basis.  Id. at 4007-4008.

The emergency protections were permanently extended by a subsequent rule, published on September 21, 2000.  Final Rule to List the Santa Barbara County Distinct Population of the California Tiger Salamander as Endangered, 65 Fed. Reg. 57242 (Sept. 21, 2000).

**II.**    **PROTECTION OF THE SONOMA SALAMANDER AS "ENDANGERED"**

("CENTER FOR BIOLOGICAL DIVERSITY I")

In the decade following the 1992 petition to list the California tiger salamander, the Service failed to take any action to protect the Sonoma or Central California salamanders, and the species continued to decline in these areas.  In June, 2001, the Center petitioned the Service to list the Sonoma salamander on an emergency basis.  When the Service failed to take any action on this petition, the Center filed litigation to compel the Service to protect both the Sonoma and Central California Salamanders.  Center for Biological Diversity v. U.S. Fish and Wildlife Service, C-02-0558 WHA (N. D. Cal.) ("Center for Biological Diversity I").

A Consent Decree entered in Center for Biological Diversity I required the Service to submit a determination on the Center's petition to list the Sonoma salamander for publication in the Federal Register by July 15, 2002, and required that, if the Service determined that the Sonoma salamander warranted emergency listing, that the Service promulgate both an emergency listing rule and a subsequent final listing determination prior to the expiration of the emergency rule.  Ex. A, Attachment 2 at 3-4, ¶¶ 1-4 (Stipulated Settlement Agreement and Consent Decree, June 6, 2002 in Center for Biological Diversity I.)

The Service listed the Sonoma salamander on an emergency basis on July 22, 2002. Emergency Rule Listing the Sonoma County Distinct Population Segment of the California Tiger Salamander as Endangered, 67 Fed. Reg. 47726 (July 22, 2002).  The Service determined that the Sonoma salamander should be listed as a distinct population segment because it was distinct from other California tiger salamander populations as well as biologically and ecologically significant.  Id. at 47729-47730.  The Service found that the Sonoma salamander faced "a significant and immediate risk" of extinction, and listed it as endangered on an emergency basis. Id. at 47726.

On March 19, 2003, the Service permanently extended the protections of the emergency listing via a final listing rule for the Sonoma salamander.  Determination of Endangered status for the Sonoma County Distinct Population Segment of the California Tiger Salamander; Final Rule, 68 Fed. Reg. 13498 (March 19, 2003).

III.    **PLAINTIFFS' CHALLENGE TO THE LISTING OF THE SONOMA AND
SANTA BARBARA SALAMANDERS ("HOME BUILDERS I")**

The lead Plaintiff in this case, Home Builders Association of Northern California, and other entities filed a lawsuit challenging the protection of the Sonoma and Santa Barbara Salamanders as endangered in the Eastern District of California on February 19, 2004.  Ex. A, Attachment 4 (Complaint in Home Builders Association of Northern California, et al., v. Steven A. Williams, et al., Civ. No. 04-0345 LKK GGH ("Home Builders I".)  On April 9, 2004, the District Court granted the Center's and Environmental Defense Center's Motion to Intervene. Ex. A, Attachment 5 (April 9, 2004 Order in Home Builders I).

Pursuant to the Consent Decree in Center for Biological Diversity I, the Service was to issue a final determination on whether the Central California Salamander should be listed under the ESA by May 15, 2004.  Ex. A, Attachment 2 at 4, ¶ 6 (Stipulated Settlement Agreement and Consent Decree, June 6, 2002 in Center for Biological Diversity I).   The Service did not issue a final determination by that date, but instead filed a motion for a six month extension of the deadline, which the Center opposed.  Following briefing and oral argument, Judge Alsup granted the Service a nine-week extension until July 23, 2004 to make a final determination.  Ex. A, Attachment 3 at 1 (June 14, 2004 Order in Center for Biological Diversity I).

On August 4, 2004, the Service issued the Final Rule which listed the Central California Salamander as threatened.   Determination of Threatened Status for the California Tiger Salamander; and Special Rule Exemption for Existing Routine Ranching Activities; Final Rule, 69 Fed. Reg. 47212 (August 4, 2004).  However, the August 4, 2004 Final Rule also purported to reclassify the Sonoma and Santa Barbara Salamanders from endangered to threatened and eliminate their distinct population segment status.  Id.  Based on this rulemaking, discussed further below, Home Builders filed a motion to dismiss their case challenging the endangered listings of the Sonoma and Santa Barbara Salamanders as moot.  This motion was granted and Home Builders I was dismissed on March 2, 2005.  Ex. A, Attachment 6 (March 2, 2005 Order in Home Builders I).

IV.    **FIRST CHALLENGE TO THE AUGUST 4, 2004 FINAL RULE CHALLENGED IN THIS ACTION ("CENTER FOR BIOLOGICAL DIVERSITY II")**

The Center filed a complaint on October 13, 2004 challenging the portions of the August 4, 2004 Final Rule that purported to reclassify the Santa Barbara and Sonoma salamanders from "endangered" to "threatened," and eliminate their separate listings as distinct population segments. Center for Biological Diversity, et al., v. U.S. Fish and Wildlife Service, et al., Civ. No. 04-4324 WHA (N.D.Cal.) ("Center for Biological Diversity II"). The Center also challenged the "4(d) Rule," which exempted certain ranching activities from the prohibitions of the Endangered Species Act as applied to all three salamanders. Center for Biological Diversity II was related to Center for Biological Diversity I and transferred to Judge William H. Alsup. Eleven of the Plaintiffs[2] in Home Builders I moved for intervention in Center for Biological Diversity II. This motion was granted. Ex A, Attachment 7 (May 31, 2005 Order in Center for Biological Diversity II).

The case was then fully litigated. Federal Defendants produced a six-volume administrative record consisting of well over 30,000 pages. The Court reviewed over 140 pages of substantive briefing, along with hundreds of pages of record excerpts. See Docket Nos. 47-60 in Civ. No. 04-4324 (N.D Cal.). The Court ordered supplemental briefing on two separate topics. See Docket Nos. 61-62 Civ. No. 04-4324 (N.D.Cal.). Following a lengthy summary judgment hearing, Judge Alsup issued a 25-page Opinion resolving the case. Ex. A, Attachment 1 (August 19, 2005 Order in Center for Biological Diversity II). The Court invalidated the reclassification of the Sonoma and Santa Barbara Salamanders from endangered to threatened

---

[2] The Intervenors were the City of Rohnert Park, City of Santa Rosa, Blochman Union School District, Burbank Housing Development Corporation, Coalition of Labor, Agriculture and Business of Santa Barbara County, Cobblestone Homes, Inc., Grower-Shipper Vegetable Association of Santa Barbara and San Luis Obispo Counties, North Coast Builders Exchange, Northern California Engineering Contractors Association, Santa Maria Valley Chamber of Commerce, and Santa Rosa Chamber of Commerce. Plaintiffs in this case may be in privity with one or more of these Intervenors and therefore bound by the decision in Center for Biological Diversity II.

and the elimination of their distinct population segment status, noting the unlawful political interference in the decision making process, which is required by statute to be based solely on the best scientific information.  Ex. A, Attachment 1 at 2-9, 19-23.

The Court upheld the designation of the Central California salamander as "threatened," (Ex. A, Attachment 1 at 16), the result that Plaintiffs now seek to re-litigate here.  The Court also upheld the Section 4(d) Rule with respect to the Central California salamander, but not as to the Sonoma or Santa Barbara salamanders.  Finally, the Court remanded the matter to the Service for any further rulemaking and retained jurisdiction over any review thereof.  Ex. A, Attachment 1 at 25.

Based on this procedural history, it is clear that this case is related to Center for Biological II and should be transferred to Judge Alsup, who has already fully considered the August 4, 2004 Final Rule at issue here.

## STANDARD OF REVIEW

This Court has the authority to transfer this case to the Honorable Judge William H. Alsup in the Northern District of California pursuant to 28 U.S.C. Section 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Section 1404(a) grants courts broad discretion to determine whether to transfer a case from one forum to another.  Courts should exercise that discretion "according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  A defendant's burden in demonstrating that transfer is proper, however, is "substantially diminished where, as here, transfer is sought to the forum where plaintiffs reside . . . and the connection between plaintiffs, the controversy and the chosen forum is attenuated."  Citizen Advocates for Responsible Expansion, Inc. v. Dole, 561 F. Supp. 1238, 1239 (D.D.C. 1983).  Moreover, "the showing defendants must make is lessened when . . . transfer is sought to

the forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state." Trout Unlimited v. U.S. Dep't of Agriculture, 944 F. Supp. 13, 17 (D.D.C. 1996) (citations omitted).

Once a court has determined that the case could have been brought in the district to which transfer is sought, nine factors are considered. The first six factors consist of private interest considerations:  (1) plaintiffs' forum of choice; (2) defendant's forum choice; (3) whether the claim arose elsewhere; (4) convenience of the parties; (5) convenience of the witnesses; and (6) ease of access to the proof. The final three factors take into account the public interest or the "interests of justice." They are: (1) the transferee court's familiarity with the governing law; (2) the relative congestion of both courts; and (3) local interest in deciding local controversies at home.  Southern Utah Wilderness Alliance v. Norton, 315 F.Supp.2d 82, 85 (D.D.C. 2004); The Wilderness Society v. Babbitt, 104 F. Supp. 2d 10 (D.D.C. 2000).

## ARGUMENT

## I.    THIS CASE SHOULD BE TRANSFERRED TO HONORABLE JUDGE WILLIAM H. ALSUP IN THE NORTHERN DISTRICT OF CALIFORNIA

Each of the nine venue transfer factors is discussed in turn below, and each supports transfer to the Northern District of California.  Perhaps most importantly, however, Judge Alsup has presided over Center for Biological Diversity I and Center for Biological Diversity II, two previous cases concerning the listing of the Central California Salamander under the ESA.  In Center for Biological Diversity II, Judge Alsup upheld the portion of the August 4, 2004 Final Rule listing the Central California Salamander as "threatened" now challenged here, and retained jurisdiction to hear any challenges to any future rulemakings undertaken by the Service as a result of that decision.  Ex.A, Attachment 1 at 16, 25 (August 19, 2005 Order).  For this reason, the interests of justice overwhelmingly support a transfer in order to minimize the risks of inconsistent judgments, conserve the resources of the Courts and the Parties, and minimize forum shopping.

### A.    This Action Could Have Been Brought in the Northern District of California

The only limitation of the Court's discretion to transfer an action is the statutory requirement that a case be transferred to another "district or division where [the case] might have been brought." 28 U.S.C. § 1404(a); <u>Kafack v. Primerica Life Ins. Co.</u>, 934 F. Supp. 3, 4 (D.D.C. 1996).

In an action where an agency of the United States is a defendant, venue is proper in "any judicial district in which . . . a substantial part of the events or omission giving rise to the claim occurred," or in which "the plaintiff resides . . . ." 28 U.S.C. 1391(e). <u>See</u>, <u>e.g.</u>, <u>Trout Unlimited</u>, 944 F. Supp. at 16 (citing <u>Towns of Ledyard v. United States</u>, 1995 U.S. Dist. LEXIS 21477, * 3 (D.C.C. 1987) and <u>Martin-Trigona v. Meister</u>, 668 F. Supp. 1, 4 (D.D.C. 1987)).

Plaintiffs could certainly have brought this action in the Northern District of California. The Central California Salamander can only be found in California, and a substantial portion of its habitat is within the Northern District of California in counties including Alameda, Contra Costa, Santa Clara, San Benito, and Monterey. <u>See</u> 70 Fed. Reg. 49380 (designating critical habitat for the Central California Salamander in these counties); 70 Fed. Reg. 49394 (map). Venue is thus proper in the Northern District of California under 28 U.S.C. Section 1391(e)(2) (venue where substantial portion of events occurred). Moreover, Plaintiffs Home Builders Association of Northern California, California Building Industry Association, and Building Industry Legal Defense Foundation are all California corporations, and lead Plaintiff Home Builders resides in the Northern District of California (San Ramon, Contra Costa County), making venue proper under 28 U.S.C. Section 1391(e)(3) (venue where plaintiff resides). Accordingly, there can be no question that this Court has the authority to transfer this case to the Northern District of California. Indeed, litigation over this same species in the Northern District of California stretches back over four years, and litigation over the Final Rule challenged here concluded less than one year ago.

As explained below, both the private interests and the interests of justice require that the case be transferred to Judge Alsup.

**B.     The Private Interest Considerations Weigh in Favor of Transfer**

*1.  Plaintiffs' Choice of Forum*

Where Plaintiffs' choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter, Plaintiffs' choice is accorded significantly less weight. Wilderness Society, 104 F. Supp. 2d at 13; Armco Steel Co., L.P. v. CSX Corp., 790 F. Supp. 311, 323 (D.D.C. 1991); Hawksbill Sea Turtle v. Federal Emergency Management Agency, 939 F. Supp. 1, 3 (D.D.C. 1996) (holding that less deference should be paid to plaintiffs' choice of forum where project, species habitat, and alleged violation of environmental law occurred in another forum); Sierra Club v. Flowers, 276 F. Supp. 2d 62 (D.D.C.  2003); Kafack, 934 F. Supp. at 6; Harris v. Republic Airlines, 699 F. Supp. 961, 963, (D.D.C. 1988) (deference overcome where plaintiff's choice of forum "has no factual nexus to the case").

This is precisely the case here.  The California tiger salamander is an amphibian that occurs only in parts of California and nowhere else in the world.  The agency scientists charged with assembling the scientific information required by law to be the basis for the agency decision challenged in this action are based in California.  All three Plaintiffs are based in California.  The Center maintains several offices in California, and its California-based staff have worked for years to protect this species.

Moreover, in Home Builders I, the lead Plaintiff in this case previously filed a case concerning the Sonoma and Santa Barbara salamanders in the Eastern District of California. Plaintiffs' choice of forum should be given even less deference where they have recently chosen to litigate claims relating to the same species in California.

*2.     Defendants' Choice of Forum*

Federal Defendants have indicated that they take no position at this time on the transfer of this case to the Northern District of California.  Ex. A at ¶ 2 (Siegel Dec.).  The Center's choice of forum is the Northern District of California, where Judge Alsup has presided over two related cases, and has retained jurisdiction to hear challenges to any future rulemakings regarding this species.  This preference should be accorded significant weight.

3. *Where the Claim Arose*

Where the current claims arose is not conclusive in this case. The agency scientists with responsibility for the Central California Salamander are located in California, as is the species itself. Much of the administrative rulemaking procedure took place in California. However, as noted by the Court in Center for Biological Diversity II, the interference of political appointees with portions of the Final Rule occurred in Washington, D.C. Just as in Wilderness Society, where the claim arose is not conclusive in this case. 104 F. Supp. 2d 15.

4. *Convenience to the Parties*

The Northern District of California is the most convenient forum for this action. Two out of three of Plaintiffs' attorneys are located in California, one (Mr. Campos) is in the Northern District. Intervenor-Applicant's lead attorney is located in California, as is the Center's San Francisco office. Both of the Center's declarants are located in the Northern District of California. Ex. B at ¶ 2 (Galvin Dec.); Ex. C at ¶ 3 (Bevington Dec.).

In addition, there could be limited discovery in this matter, which would be more easily conducted in the Northern District because all three Plaintiffs are based in California. It is possible that Plaintiffs in this case are in privity with one or more of Intervenor-Defendants in Center for Biological Diversity II, and therefore bound by that decision. Discovery may be necessary on this point. Moreover, the Service employees who are most knowledgeable about the Central California Salamander work just adjacent to the Northern District of California in the Sacramento Fish and Wildlife Office.

Additionally, Home Builders of Northern California, the lead Plaintiff in this case, has previously filed a case concerning the Sonoma and Santa Barbara salamanders in the Eastern District of California. Ex. A, Attachment 4 (Complaint in Home Builders I). This same Plaintiff, which resides in the Northern District of California, cannot now be heard to complain that a California venue would be prejudicial or inconvenient.

5. *The Convenience of the Witnesses*

Because witnesses are not anticipated in this case, this factor is not determinative here.

6.     *The Ease of Access to the Proof*

When the administrative record is the "only source of proof" that will be seen by the Court, it is appropriate to consider its location.  Wilderness Society, 104 F. Supp. 2d at 15-16 citing Trout Unlimited, 944 F. Supp. at 18 and Hawksbill, 939 F. Supp. at 3.  Judicial review will likely be limited to the administrative record that was before Defendants at the time the federal rule at issue was finalized.  Commercial Drapery  Contractors, Inc. v. United States of America, 133 F.3d 1, 7 (D.C. Cir. 1998); Trout Unlimited, 944 F. Supp. at 18.  The administrative record for this case is identical to that already prepared by federal Defendants in Center for Biological Diversity II.  The majority of the documents in that record were from the Sacramento, California Fish and Wildlife Office.  The Northern District of California is, then, a far more convenient forum than the District of Columbia.  See Continental Grain Co. v. Barge SBL-585, 364 U.S. 19, 26 (1960) (stating that "where a 'civil action' to vindicate a wrong—however brought in court— presents issues  . . . that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court."); Hardware Constructor v. Conesco Industries, 583 F. Supp. 617, 619 (D.N.J. 1983) (stating that "[w]here those records and witnesses are seems to the court to be the best place to litigate the dispute.").

**C.     The Interests of Justice Require Transfer to the Northern District of California**

Numerous courts have noted that the "interest of justice" is the most significant element in addressing a motion to transfer.  Wilderness Society, 104 F. Supp. 2d at 16, citing Hawksbill, 939 F. Supp at 4; Coffey v. Van Dorn Iron Works, 796 F.2d 217, 221 (7th Cir. 1986) (holding that the interest of justice may be determinative); Chrysler Capital Corp. v. Woehling, 663 F. Supp. 478, 483 (D. Del. 1987) (stating that the interest of justice is the "most significant criterion.").  As described below, the interests of justice are best served by transferring this action to the Northern District of California.

1.     *Transferee Court's Familiarity with Governing Law*

Judge Alsup in San Francisco has already presided over two cases concerning the protection of the Central California Salamander.  The first case, <u>Center for Biological Diversity I</u>, resulted in the Service's obligation to publish a final determination on whether the Central California Salamander should be protected under the ESA.  This final determination is the August 4, 2004 Final Rule challenged here.  The second case, <u>Center for Biological Diversity II</u>, was a challenge to portions of that August 4, 2004 Final Rule.  Judge Alsup considered a more than 30,000 page administrative record, over 140 pages of briefing, and multiple hours of oral argument, following which he issued a detailed 25-page Final Order and retained jurisdiction over any challenges to further rulemaking concerning this species.   Ex. A, Attachment 1 at 25 (August 19, 2005 Order).

Just as in <u>Hawksbill Sea Turtle</u>, Judge Alsup is clearly most familiar with the governing law and facts of this case, and transfer will clearly promote judicial economy:

> The prior action in the District Court for the Virgin Islands created three volumes of trial transcript, and a large volume of documents, including exhibits. Moreover, the court heard three days of evidentiary testimony and oral argument on the TRO, and had an extensive evidentiary hearing regarding the preliminary injunction.  Certainly no other court is more familiar with the factual background and legal issues of this case than the District Court for the Virgin Islands, and there is little doubt that transfer of this case will promote significant economy of judicial resources.

939 F. Supp. at 3-4.

In considering whether a transfer is in the interest of justice, courts frequently mention the desire to avoid multiple litigation stemming from a single transaction.  Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3854 (1986).  Courts have recognized a "strong policy favoring the litigation of related claims in the same tribunal can outweigh the deference due the plaintiff's choice of forum."   <u>Celanese Corp. v. Federal Energy Administration</u>, 410 F. Supp. 571, 576 (D.D.C. 1976) (citing <u>Wyndham Associates v. Bintliff</u>, 398 F.2d 614, 619 (2d Cir.), <u>cert. denied</u>, 393 U.S. 977 (1968)).  Consolidating related litigation involving many of the same parties before a single court avoids pretrial discovery in multiple

forums, "thereby saving time and expense for both parties and witnesses, [and preventing] inconsistent results." Wyndham Associates v. Bintliff, 398 F.2d at 619.

Allowing this case to go forward in this Court would clearly result in multiple cases stemming from the same August 4, 2004 Final Rule, and would present a great risk of inconsistent results. Judge Alsup fully considered the August 4, 2004 Final Rule challenged here, as well as the lengthy administrative record, and held "*First*, the designation of the Central California tiger salamander as 'threatened' is sustained." Ex. A, Attachment 1 at 16 (August 19, 2005 Order). Clearly, this case has the potential to result in inconsistent litigation results. Moreover, Judge Alsup has retained jurisdiction to hear any challenges to future rulemakings concerning this species. Id. at 25. Therefore, an additional case or cases may arise and be adjudicated before Judge Alsup, further exacerbating the problem.

When two actions are filed that share the same subject matter, priority should be given to the case that is filed first through the dismissal, transfer, or stay of the second-filed case. West Gulf Maritime Association v. ILA Deep Sea Local 24, 751 F. 2d 721, 728-730 (5th Cir. 1985). See also City of New York v. Exxon Corp., 932 F.2d 1020, 1025 (2nd Cir. 1991) (under normal circumstances "first filed" cases take priority over later cases). Accordingly, the priority of the Center's previous actions should be honored. There is no need for this Court to review the same complex and voluminous agency record and re-consider identical issues of fact and law that have already been considered by the Court in Center for Biological Diversity II. The interests of justice clearly weigh in favor of transferring this case to the Northern District of California.

2.    *Relative Congestion of the Courts*

According to statistics contained in *Judicial Business of the United States Courts 2005*, the United States District Court for the Northern District of California is less congested than the District of Columbia. During the 12-month period ending September 30, 2005, the median time interval from filing to the termination of civil cases was 9.8 months in the Northern District of California and 10.8 months in the District of Columbia. Ex. A, Attachment 8. Therefore, this factor weighs in favor of transfer.

3.     *The Local Interest in Deciding Local Controversies at Home*

One of the primary factors a court should assess when considering the interest of justice is the interest in having disputes resolved in the judicial district where they arose.  As the Supreme Court has stated:

> [i]n cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.  *There is a local interest in having localized controversies decided at home.*

Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947) (emphasis added).  See also Seariver Maritime Financial Holdings v. Pena, 952 F. Supp. 9, 11-12 (D.D.C. 1997); Trout Unlimited, 944 F. Supp. at 17; Hawksbill Sea Turtle, 939 F. Supp. at 4; Towns of Ledyard, 1995 U.S. Dist LEXIS 21477 at *6.

In this case, as in Trout Unlimited, the residents of California have a "compelling interest . . . in having this localized controversy decided at home."  Trout Unlimited, 944 F. Supp. at 19. See also Citizen Advocates, 561 F. Supp. at 1240 (highway proposal a uniquely local concern and case should be transferred to Texas from Washington, D.C.).  The protection of the California tiger salamander has generated a great deal of public interest in California generally, and in the Northern District of California in particular.  For example, there have been hundreds of newspaper stories written about ESA protection for the Central California Salamander over the last five years.  Ex. A at ¶ 12 (Siegel Dec.).  Fourteen representative stories from newspapers including the *Monterey County Herald*, *San Francisco Chronicle*, *The Daily Review* (Hayward, CA), the *Oakland Tribune*, and the *Tri-Valley Herald* (Pleasanton, CA) demonstrate the local interest in this issue.  Ex. A, Attachment 9 (news stories).

As noted above, the Central California Salamander is only found in California.  Further, the Service engaged in a lengthy year-long administrative process, leading up to the final listing, which took place in California.  Two out of three public hearings on the proposed listing occurred in the Northern District of California (in Livermore and Monterey); the third took place in Merced, California.  68 Fed. Reg. 28648.

In summary, there is very little connection at all between this case and the District of D.C.  By contrast, both the private interests and the interests of justice overwhelmingly support transfer of this case to Judge Alsup in the Northern District of California.

## CONCLUSION

For the reasons set forth above, the Center respectfully requests that this Court grant its motion to transfer this case to the Northern District of California.


Respectfully submitted this 30th day of June, 2006.


/s/ Erin M. Tobin
_____

Erin M. Tobin
(D.C. Bar No. 494948)
Katherine A. Meyer
(D.C. Bar No. 244301)

MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., N.W.
Suite 700
Washington, D.C. 20009
(202) 588-5206
(202) 588-5049 fax

Kassia Siegel (Pro Hac Vice Applicant)
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252
Telephone:  760-366-2232
Facsimile:  760-366-2669

Attorneys for Intervenor-Defendant-Applicant Center for Biological Diversity